ROBERT SINGER AND DURANNE CRAIN FKA DURANNE SINGER, APPELLANTS, v. CHASE MANHATTAN BANK, RESPONDENT.

No. 22365

March 2, 1995                              890 P.2d 1305

*Marquis, Haney & Aurbach,* Las Vegas, for Appellants.

*Cohen, Lee, Johnson & Merialdo,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

On April 16, 1987, while vacationing in Hawaii, appellants purchased art work from a Hawaii merchant. Appellants charged $900.00 on their Chase Manhattan Bank Visa credit card as a down payment on the art work. The $1,800.00 balance of the purchase price was charged to appellants' Visa account on May 20, 1987, after appellants returned home to Las Vegas. On June 25, 1987, at least some of the art work was delivered to appellants in Las Vegas. Appellants claim that the art work was damaged. They returned the art work to the Hawaii merchant on July 14, 1987.

Appellants claim that they reluctantly agreed to purchase a replacement work of art for an additional $100.00, which was also charged to their Visa account. Thus, appellants charged a total of $2,800.00 to their Visa account. The new work of art never arrived.

On July 15, 1987, appellants wrote a letter to Chase Manhattan requesting full credit on their account pursuant to 15 U.S.C. § 1666, because they had never received the item they had pur-

chased. In August 1987, Chase Manhattan credited appellants' account for $2,800.00, the full amount of the work of art that was purchased. In September 1987, however, Chase Manhattan recharged appellants' Visa account for the full $2,800.00.

On July 17, 1990, appellants filed a complaint for a declaratory judgment against respondent Chase Manhattan Bank, alleging that no sums were owed by appellants to Chase Manhattan. After Chase Manhattan filed its answer on August 17, 1990, appellants filed a motion for summary judgment. In their motion for summary judgment, appellants claimed they were entitled to judgment pursuant to 15 U.S.C. § 1666i, which makes a credit card issuer subject to claims arising out of transactions in which the credit card is used as the method of payment.[1] Chase Manhattan filed an opposition to appellants' motion for summary judgment, and subsequently filed a motion for attorney's fees and costs. Appellants opposed Chase Manhattan's motion. During a hearing on appellants' motion for summary judgment, Chase Manhattan made an oral motion to dismiss the complaint. Appellants did not oppose the motion.

On March 27, 1991, the district court entered an order dismissing appellants' complaint and awarding attorney's fees and costs to respondent. The district court based the dismissal on its finding that appellants resided more than one hundred miles from the place where appellants purchased the art work on their Chase Manhattan Visa account. The district court further found that this was not a collection action, and that appellants' claims were not brought in bad faith. The district court awarded Chase Manhattan the sum of $1,750.00 as attorney's fees, and costs in the amount of $150.12.

Appellants first contend that the district court erred in dismissing their complaint. While admitting that under 15 U.S.C. § 1666i, the initial transaction must have occurred within one hundred miles of their mailing address, appellants present policy arguments as to why they should be excused from this require-

---

[1] 15 U.S.C. § 1666i (1982) provides, in pertinent part:

(a) Subject to the limitation contained in subsection (b) of this section, a card issuer who has issued a credit card to a cardholder pursuant to an open end consumer credit plan shall be subject to all claims (other than tort claims) and defenses arising out of any transaction in which the credit card is used as a method of payment or extension of credit if (1) the obligor has made a good faith attempt to obtain satisfactory resolution of a disagreement or problem relative to the transaction from the person honoring the credit card; (2) the amount of the initial transaction exceeds $50; and (3) the place where the initial transaction occurred was in the same State as the mailing address previously provided by the cardholder or was within 100 miles from such address . . . .

ment. Appellants argue that the one hundred mile requirement is unrealistic because an explosion in credit card use has occurred since 15 U.S.C. § 1666 was written. Appellants further complain that if the one hundred mile limit is enforced, an unscrupulous merchant could defraud travelers almost at will, secure in the knowledge that it is unlikely that the traveler would return to a remote location to press a claim against the merchant. *See* Lincoln First Bank, N.A. v. Carlson, 426 N.Y.2d 433 (1980) (holding that under 15 U.S.C. § 1666i, a cardholder is not automatically presumed to give up all his defenses if the transaction takes place beyond the geographic limits set forth in the statute). Finally, appellants note that the credit card issuer, because of its regular contact with both the merchant and the cardholder, is in the best position to prevent problems such as those which occurred in this case.

After considering appellants' arguments, we decline to go beyond the plain language of the statute and create an exception to the one hundred mile limit of 15 U.S.C. § 1666i.

In their reply brief, appellants argue that a second transaction took place when appellants agreed to purchase a replacement piece of art for an additional $100.00. Appellants argue that this second transaction took place in Nevada over the telephone. Appellants characterize the merchant's willingness to settle the dispute by supplying other goods at an increased price as an offer to enter into a new transaction, which offer appellants allege they accepted in Nevada. According to appellants, because the transaction took place in their home state, the one hundred mile limit of 15 U.S.C. § 1666i does not apply.

Appellants have presented this argument for the first time in their reply brief. Because this argument was not raised before the district court, we decline to consider it. *See* Gibbons v. Martin, 91 Nev. 269, 534 P.2d 915 (1975).

Relying on NRS 18.010, appellants next contend that because there were reasonable grounds for their claim, the district court abused its discretion in granting attorney's fees to Chase Manhattan.

NRS 18.010 provides in pertinent part:

    1.  The compensation of an attorney and counselor for his services is governed by agreement, express or implied, which is not restrained by law.

    2.  In addition to the cases where an allowance is authorized by specific statute, the court may make an allowance of attorney's fees to a prevailing party:

(a) When he has not recovered more than $20,000; or

(b) Without regard to the recovery sought, when the court finds that the claim, counterclaim, cross-claim or third-party complaint or defense of the opposing party was brought without reasonable ground or to harass the prevailing party.

Here, there was no agreement between the parties, express or implied, regarding attorney's fees. Thus, NRS 18.010(1) has no application to this case.

NRS 18.010(2) provides for an award of attorney's fees in two circumstances only. Pursuant to NRS 18.010(2)(b), the district court may make an allowance of attorney's fees to a prevailing party if it finds that the claim of the opposing party "was brought without reasonable ground or to harass the prevailing party." In this case, the district court's judgment included an express finding that appellants' claims were not brought in bad faith. Therefore, it is apparent that the district court did not award attorney's fees pursuant to NRS 18.010(2)(b).

Pursuant to NRS 18.010(2)(a), the district court may make an allowance of attorney's fees to a prevailing party when that party has not recovered more than $20,000, regardless of the merits of the claim of the opposing party. It is on this basis that the district court presumably awarded attorney's fees to Chase Manhattan.

In City of Las Vegas v. Cragin Industries, 86 Nev. 933, 940, 478 P.2d 585, 590 (1970), this court held that the district court erred in awarding attorney's fees pursuant to NRS 18.010(3) to a prevailing plaintiff in an action for injunctive and declaratory relief "because that statute as a condition precedent requires the award of a money judgment."

The 1971, 1975 and 1977 versions of NRS 18.010 set as a standard for recovery of attorney's fees by a prevailing plaintiff the amount of the plaintiff's actual recovery. 1971 Nev. Stat., ch. 115, § 1 at 165; 1975 Nev. Stat., ch. 243, § 10 at 309; 1977 Nev. Stat., ch. 401, § 4 at 774. In International Indus. v. United Mtg. Co., 96 Nev. 150, 606 P.2d 163 (1980), this court applied the holding of *Cragin Industries*—that recovery of a money judgment was necessary to an award of attorney's fees to a prevailing plaintiff—to prevailing counter-claimants, who were plaintiffs on their counterclaims. Thus, pursuant to *International Industries,* only counter-claimants who obtained a money judgment could recover attorney's fees.

During this same time period, however, the 1971, 1975 and 1977 versions of NRS 18.010 set as a standard for recovery of attorney's fees by a prevailing defendant the amount of recovery sought by the plaintiff, rather than the amount of the prevailing defendant's recovery. 1971 Nev. Stat., ch. 115, § 1 at 165; 1975

Nev. Stat., ch. 243, § 10 at 309; 1977 Nev. Stat., ch. 401, § 4 at 774. Consequently, in Wiley v. Cook, 94 Nev. 558, 583 P.2d 1076 (1978), this court did not apply the holding of *Cragin Industries* to prevailing defendants. Instead, this court affirmed in *Wiley* an award of attorney's fees in favor of prevailing defendants to a counterclaim who had not recovered a money judgment.

In 1985, however, the legislature again amended NRS 18.010. *See* 1985 Nev. Stat., ch. 83, § 1 at 327. Deleting all references to "plaintiffs" and "defendants," the legislature changed the relevant part of the statute to simply refer to "a prevailing party" and established the amount of recovery by that party, whether plaintiff or defendant, as the standard for recovery of attorney's fees under NRS 18.010(2)(a). After that change in the law, consistent with prior caselaw, this court extended to prevailing defendants the requirement of a money judgment for recovery of attorney's fees under NRS 18.010(2)(a). Key Bank v. Donnels, 106 Nev. 49, 787 P.2d 382 (1990). We have consistently applied the holding of *Key Bank* in subsequent cases. *See* Woods v. Label Investment Corp., 107 Nev. 419, 812 P.2d 1293 (1991); Nat'l Union Fire Ins. v. Pratt and Whitney, 107 Nev. 535, 543, 815 P.2d 601, 605 (1991); Shupe & Yost, Inc. v. Fallon Nat'l Bank, 109 Nev. 99, 847 P.2d 720 (1993).

In the instant case, the district court did not award Chase Manhattan a money judgment. Therefore, under our holding in *Key Bank,* the district court could not properly award Chase Manhattan attorney's fees pursuant to NRS 18.010(2)(a).

Accordingly, we affirm the district court's dismissal of appellant's complaint, and we reverse the award of $1,750.00 in attorney's fees.

STEFFEN, C. J., concurring:

I concur in the judgment and Opinion of the Majority in all respects. I write separately, nevertheless, to address an issue not discussed by the Majority.

A prevailing defendant almost never recovers a money judgment. As a practical matter, the only money award a prevailing defendant can recover without bringing a counterclaim is an award of costs. Thus, by requiring prevailing defendants to obtain a money judgment in order to receive attorney's fees pursuant to NRS 18.010(2)(a), we have effectively written prevailing defendants out of the statute.

It is clear from its use of the term "prevailing party" that the legislature did not intend to preclude prevailing defendants from recovering attorney's fees pursuant to the latest revision of NRS 18.010(2). Therefore, applying to prevailing defendants the

requirement of a money judgment for the recovery of attorney's fees pursuant to NRS 18.010(2)(a) frustrates the intent of the legislature. Applying the requirement to prevailing defendants also undermines one of the basic premises underlying our civil justice system: to make an aggrieved party whole. This was apparently one of the objectives of the legislature in enacting NRS 18.010. *See* Hearing on Assembly Bill 223 in Assembly Committee on the Judiciary, 1967, at 151.

On the other hand, were this court to hold that a prevailing defendant need not obtain a money judgment in order to be awarded attorney's fees under the statute, the lack of any other standard in the statute with respect to defendants would result in the possible recovery of attorney's fees by defendants in cases involving millions of dollars, such as when a corporate defendant prevails in a large contract dispute or in an action for injunctive or declaratory relief. It does not appear that the legislature intended to abrogate the American rule regarding attorney's fees for civil defendants, nor do I believe the legislature meant to provide a great advantage in complex litigation to defendants. Instead, the statute appears to have been intended to provide attorney's fees to the prevailing party in small lawsuits where damages are limited.

It nevertheless remains true that the statute in its present form, which essentially never provides for a recovery of attorney's fees by defendants while providing for such a recovery for plaintiffs, creates a serious inequity against prevailing defendants, an inequity that was apparently unintended. Amendment of the statute is a matter for the consideration of the legislature, not this court. I therefore strongly urge the legislature to consider whether NRS 18.010 should be amended in some manner to remedy the inequities here noted.